419 A.2d 631

**Daniel HUNTER, Appellant,**

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1978.

Filed April 3, 1980.

Daniel P. McDyer, Pittsburgh, for appellant.

Russell W. Ayres, III, Pittsburgh, for appellee.

Before VAN der VOORT, SPAETH and MONTGOMERY, JJ.

SPAETH, Judge:

This appeal arises from an order dismissing a complaint for failure to state a cause of action upon which relief may be granted.

On November 14, 1977, appellant filed a complaint in equity in the Court of Common Pleas of Allegheny County containing the following allegations. In October 1976, appellant applied for employment as a bus driver with the Port Authority of Allegheny County. He was interviewed and tested by employees of the Port Authority's personnel division, and in July 1977, was informed that he could begin training as a bus driver in October 1977. On September 8, 1977, the Port Authority informed appellant that he would not be trained as a bus driver because he falsified his employment application. In filling out the application, appellant, unsure of the correct answer, did not respond to a question asking for information concerning appellant's past felony or misdemeanor convictions. Appellant, however, subsequently informed a personnel assistant of the Port Authority during an employment interview that in 1963 he had been convicted of an aggravated assault and battery that arose out of a domestic dispute and was sentenced to ninety days imprisonment. Appellant also told the personnel assistant that the Governor later unconditionally pardoned him for the offense. The complaint alleged that the Port Authority refused to employ him[1] because of this

---

1. The complaint actually reads: "The Port Authority is refusing to employ or to continue Plaintiff in its employ, because of his past conviction." The complaint thus alleges alternative causes of action against the Port Authority: either the Port Authority wrongfully refused to employ appellant as a bus driver, or it wrongfully discharged him after an employment contract had been entered into (presumably in July 1977 when appellant was told he could begin bus

pardoned conviction (and, by implication, not because of his failure to complete his employment application properly), and that this refusal allegedly violated appellant's rights under article I, sections 1 and 10, of the Pennsylvania Constitution. The complaint prayed for an injunction "restraining the [Port Authority] from refusing to admit [appellant] to its bus driver training class and refusing to employ [appellant]," and for "such other relief as [the] Court may deem appropriate."

On December 16, 1977, the Port Authority filed preliminary objections in the nature of a demurrer to the complaint. The demurrer alleged that as a matter of law the refusal of the Port Authority to employ appellant as a bus driver because of his failure to disclose his prior criminal conviction did not constitute a violation of article I, sections 1 and 10. The demurrer also alleged that appellant lacked standing to challenge the Port Authority's actions, and that the court in equity lacked jurisdiction because appellant's complaint failed to allege the inadequacy of remedies at law. On April 26, 1978, the lower court sustained the demurrer and dismissed the complaint. The lower court reasoned that "[a] refusal to hire because of a conviction for aggravated assault and battery is reasonable, given the fact that a bus driver is constantly dealing with the public, often under stressful and anger–provoking situations. Failure to disclose a material fact, such as the one in issue, is an element which may be considered, along with others, if any, factors in determining whether to enter into an employment contract. Furthermore, it may be noted that no person has a constitutional right to public employment. One merely has the right to be considered for a job on a fair and reasonable

driver training in October). On this appeal, however, appellant limits his argument to the sufficiency of the complaint in stating a cause of action for the Port Authority's wrongful refusal to employ him as a bus driver. We shall, therefore, examine only this aspect of the complaint.

basis." Slip op. of the lower court at 2–3.[2] This appeal followed.[3]

The legitimacy of governmental bans [4] on the employment of ex–criminal offenders has, during the last decade, been the subject of considerable judicial and legislative concern. Federal courts have held that a ban prohibiting the employment of persons who have been guilty of past misconduct violates federal law unless the ban is rationally related to a

2. The lower court did not discuss the other objections raised by the Port Authority. On this appeal, the Port Authority renews its objections that the complaint failed to state a cause of action and that the lower court lacked equity jurisdiction. It does not renew its standing argument.

For the reasons discussed below, we hold that appellant has stated a cause of action under article I, section 1, of the Pennsylvania Constitution, and that the order of the lower court must be reversed. We decline, however, to reach the Port Authority's contention that since the lower court cannot grant specific performance of an employment contract, and an adequate remedy at law exists, appellant's action should be certified to the law side of the court. The novel questions concerning the relief a court may order when an employer breaches a job applicant's rights under article I, section 1, were not addressed by the lower court. Additionally, the briefs of the parties are not particularly enlightening regarding this matter. In these circumstances, we think it proper to allow the lower court to consider the matter first, assuming, of course, that the Port Authority pursues its objection on remand. We note that whether the lower court decides to retain equity jurisdiction or to certify the action to the law side of the court, its decision will be interlocutory. *Goldman v. McShain*, 432 Pa. 61, 247 A.2d 455 (1968); *Ridge Radio Corp. v. Glosser*, 417 Pa. 450, 208 A.2d 839 (1965); *Kramer v. Kramer*, 260 Pa.Super. 332, 394 A.2d 577 (1978).

3. Appellant does not argue on this appeal that the complaint states a cause of action under article I, section 10, of the Pennsylvania Constitution, and we do not consider that issue. However, in addition to arguing that his complaint states a cause of action under article I, section 1, appellant asserts that his rights under article I, sections 9 and 26, have been abridged. Because we hold that appellant's claims against the Port Authority are cognizable under article I, section 1, we do not decide whether appellant's failure to allege the violation of other constitutional provisions in his complaint precludes our consideration of those provisions on this appeal.

4. The Port Authority concedes, as it must, that it is a public body performing essential governmental services. *See Port Authority of Allegheny Cty. v. Amalgamated Transit Union*, 430 Pa. 514, 515 n. 2, 243 A.2d 433, 434 n.2 (1968); *Amalgamated Transit Union v. Port Authority of Allegheny Cty.*, 417 Pa. 299, 304, 208 A.2d 271, 273 (1965); 55 P.S. §§ 551 *et seq.* (1964).

legitimate governmental objective. *See, e. g., Thompson v. Gallagher,* 489 F.2d 443 (5th Cir. 1973) (municipal ordinance barring employment as custodian of person who had been discharged from army under other than honorable circumstances violates due process and equal protection clauses of the fourteenth amendment); *Smith v. Fussenich,* 440 F.Supp. 1077 (D.Conn.1977) (three judge court) (statute barring felony offenders from employment by licensed detective and security guard agencies violates equal protection clause); *Osterman v. Paulk,* 387 F.Supp. 669 (S.D.Fla.1974) (prohibition of the employment as city office clerks of persons who had used marijuana within past six months violates equal protection clause); *Butts v. Nichols,* 381 F.Supp. 573 (S.D.Iowa 1974) (three judge court) (statute prohibiting the employment of convicted felons in civil service positions violates equal protection clause); *cf. Green v. Missouri Pacific Railroad Co.,* 523 F.2d 1290 (8th Cir. 1975) (employer's absolute policy of refusing consideration for employment to any person convicted of a crime other than a minor traffic offense violates the federal civil rights act because policy has discriminatory impact upon minorities and is not justified by business necessity). *But see New York City Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979) (refusal of transit system to employ persons who use methadone does not violate federal civil rights act or equal protection clause).

Moreover, last year our Legislature enacted the Criminal History Record Information Act, Act of July 16, 1979, P.L. 116, No. 47, 18 Pa.C.S.A. §§ 9101 *et seq.* (effective January 1, 1980), which limits the use of criminal records by employers when making employment decisions. In part, the Act provides:

Convictions for felonies, as well as misdemeanor convictions and arrests for offenses, which relate to the applicant's suitability for employment in the position for which he has applied may be considered by the employer. Misdemeanor convictions and arrests for offenses which do not relate to the applicant's suitability for employment in the position for which he has applied shall not be considered by the employer.

18 Pa.C.S.A. § 9125 (1979 Pa.Legis.Serv. at 110).

Furthermore, our Supreme Court has not hesitated to limit unwarranted governmental restrictions upon an individual's right to engage in lawful employment on account of the individual's past criminal record. In *Secretary of Revenue v. John's Vending Corp.*, 453 Pa. 488, 309 A.2d 358 (1973), the Court held that a corporation's wholesale cigarette dealer's license could not be lawfully revoked because the corporation's majority stockholder had been convicted of criminal offenses almost twenty years earlier. The Court noted that "every citizen has an inalienable right to engage in lawful employment. While a state may regulate a business which affects the public health, safety and welfare, it may not, through regulation, deprive an individual of his right to conduct a lawful business unless it can be shown that such deprivation is reasonably related to the state interest sought to be protected." 453 Pa. at 492, 309 A.2d at 361. The Court agreed that it was reasonable for the Department of Revenue to consider the character of persons being licensed to perform the duties of cigarette licensees, specifically with regard to integrity and honesty. The Court believed, however, that no material relevance existed between the past derelictions of the corporation's stockholder and either his or the corporation's present ability to perform the duties required by the position. The Court was especially mindful

of the deeply ingrained public policy of this State to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders. This State in recent years has been unalterably committed to rehabilitation of those persons who have been convicted of criminal offenses. To foreclose a permissible means of gainful employment because of an improvident act in the distant past completely loses sight of any concept of forgiveness for prior errant behavior and adds yet another stumbling block along the difficult road of rehabilitation.

453 Pa. at 494, 309 A.2d at 362.

The Court therefore concluded:

Under the facts such as those presented in this appeal, where the prior convictions do not in any way reflect upon

appellant's present ability to properly discharge the responsibilities required by the position, we hold that the convictions cannot provide a basis for the revocation of a wholesaler's license.

453 Pa. at 495, 309 A.2d at 362.

*See also Unemployment Bd. of Review v. Dixon*, 27 Pa. Cmwlth. 8, 365 A.2d 668 (1976) (former employee may not be denied employment compensation for failing to inform employer at time of hiring of prior arrest record where the arrest record did not relate to a matter material to the employment sought).

Article I, section 1, of the Pennsylvania Constitution provides:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Appellant argues that this provision guarantees him the right to be fairly considered for public employment, and that this guarantee was violated when the Port Authority refused to hire him as a bus driver because of a thirteen year old misdemeanor conviction for which he had been pardoned. He also argues that the Port Authority's refusal to employ him solely because of this conviction constitutes a denial of "the full effect of the pardon and decreases [his] liberty without affording substantive or procedural due process."

■ Although we have found no case in this Commonwealth directly on point, we have no trouble concluding that when a person is denied public employment on the basis of a prior conviction for which he has been pardoned, unless the conviction is reasonably related to the person's fitness to perform the job sought, or to some other legitimate governmental objective, article I, section 1, is violated. The Supreme Court has consistently interpreted article I, section 1, as guaranteeing an individual's right to engage in any of the common occupations of life. *See, e. g., Adler v. Montefiore Hospital Ass'n of W. Pa.*, 453 Pa. 60, 311 A.2d 634 (1973),

*cert. denied,* 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974); *State Bd. of Pharmacy v. Pastor,* 441 Pa. 186, 272 A.2d 487 (1971); *Gambone v. Commonwealth,* 375 Pa. 547, 101 A.2d 634 (1954); *Twp. of Harborcreek v. Christopher,* 184 Pa.Super. 205 (1957). This right " 'may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect.' " *Adler v. Montefiore Hospital Ass'n of W. Pa., supra,* 453 Pa. at 72, 311 A.2d at 640 (citation omitted).

■ The Port Authority's argument that article I, section 1, does not guarantee an individual the right to secure public employment completely misconstrues the issue before us. It may be granted that no one has a constitutional right to demand that the government create public employment in order to provide him with a job. However, once the government decides to create employment positions, it may not summarily reject an individual's employment application on the ground that the individual has a prior criminal record, unless in doing so the government is furthering a legitimate governmental goal. To maintain that the due process guarantees of article I, section 1, do not attach in such a situation because the individual has no "statutory entitlement" to the employment position is to adhere "to the discredited rights/privileges distinction" that has been rejected by our Supreme Court. *Pa. Coal Mining Ass'n v. Insurance Dept.,* 471 Pa. 437, 447, 370 A.2d 685, 690 (1977). "Whether an interest in benefits or protections provided by the government is entitled to due process protections depends upon the nature of the government activity and the citizen's dependency and reliance on that activity." 471 Pa. at 447–48, 370 A.2d 690.[5]

5. The Port Authority compares appellant's cause of action here to the cause involved in *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1973). In *Geary,* the Supreme Court held that a former employee of U.S. Steel failed to state a cause of action for wrongful discharge. The complaint alleged that U.S. Steel's dismissal of *Geary* stemmed from a disagreement concerning one of Steel's new products; that Geary believed the product had not been adequately tested

and constituted a serious danger to anyone who used it; that he voiced his misgivings to his superiors and was ordered to "follow directions," which he continued to do; that he nevertheless continued to express his reservations, and took his case to a vice–president; that as a result of his efforts the product was reevaluated and withdrawn from the market; that he at all times performed his duties to the best of his ability and always acted with the best interests of the company and the general public in mind; and that because of these events he was summarily discharged. The Court held that these allegations did not state a claim against Steel for the termination of an at–will employment relationship. The Court noted, however:

> It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened. The notion that substantive due process elevates an employer's privilege of hiring and discharging his employees to an absolute constitutional right has long since been discredited. But this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so. We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at–will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge. 456 Pa. at 184, 319 A.2d at 180 (footnote omitted).

Since *Geary* did not involve constitutional rights, a public employer, or a claim involving a refusal to hire a job applicant, it is distinguishable. It is further distinguishable because no clear mandate of public policy was involved. As noted above, "the deeply ingrained public policy of this State [is] to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders." *Secretary of Revenue v. John's Vending Corp., supra.* This public policy assumes added poignance where, as here, the Governor has exercised his power under article IV, section 9, of the Pennsylvania Constitution to pardon the offender. The Supreme Court has stated:

> A pardon is the exercise of the sovereign's prerogative of mercy. It completely frees the offender from the control of the state. It not only exempts him from further punishment but relieves him from all the legal disabilities resulting from his conviction. It blots out the very existence of his guilt, so that, in the eye of the law, he is thereafter as innocent as if he had never committed the offense. *Commonwealth ex rel. Banks v. Cain,* 345 Pa. 581, 584–85, 28 A.2d 897, 899 (1942).

See also *Commonwealth v. Sutley,* 474 Pa. 256, 378 A.2d 780 (1977); *Diehl v. Rodgers,* 169 Pa. 316, 32 A. 424 (1895); *Commonwealth v. House,* 10 Pa.Super. 259 (1899). This language has been limited to a degree by subsequent cases. See *Commonwealth v. Cannon,* 386 Pa. 62, 123 A.2d 675 (1956), *cert. denied* 352 U.S. 898, 77 S.Ct. 139, 1 L.Ed.2d 90 (1956), and *Commonwealth ex rel. v. Smith,* 324 Pa. 73, 187 A. 387 (1936) (prior conviction, though pardoned, may be considered in determining sentence to be imposed upon a subsequent

■ Because a cause of action may arise under article I, section 1, if a person is denied public employment because of a prior conviction, it is clear that the lower court erred in dismissing appellant's complaint upon the Port Authority's demurrer.[6]

"The standards for sustaining preliminary objections in the nature of a demurrer are quite strict. A demurrer admits every well–pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law." *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691, 693 (1976) (collecting cases). "In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery. . . . If there is any doubt, this should

conviction); *Commonwealth v. Quaranta*, 295 Pa. 264, 145 A. 89 (1928) (pardoned conviction may be used to impeach defendant in subsequent prosecution); *Commonwealth v. Homison*, 253 Pa.Super. 486, 385 A.2d 443 (1978), and *Cohen v. Barger*, 11 Pa.Cmwlth. 617, 314 A.2d 353 (1974) (pardoned conviction not expunged because not shown that pardon was granted because convict was innocent). These subsequent cases, however, do not repudiate the language in *Cain*, but rather recognize that the effect of a pardon is tempered when the pardon conflicts with other important governmental interests.

Because of the substantial public policy favoring the rehabilitation of former offenders and their reintegration into society, if any wrongful discharge case is analogous to the present case, it is not *Geary* but *Reuther v. Fowler & Williams*, 255 Pa.Super. 28, 386 A.2d 119 (1978). In *Reuther*, this court held that the law of the Commonwealth recognizes a cause of action for damages where an employee is discharged for having performed his obligation of jury service. We stated that "the necessity of having citizens available for jury service is just the sort of 'recognized facet of public policy' alluded to by our Supreme Court in [*Geary*] . . . ." 255 Pa.Super. at 33, 386 A.2d at 121. The public policy involved in the present case is at least as compelling as the policy involved in *Reuther*, and the absence here of the competing due process and associational interests of the private employer in *Reuther* makes the public policy in this case more compelling.

**6.** It may be noted that a cause of action arises directly under the Constitution for the violation of rights guaranteed under article I, section 1, and no affirmative legislation is needed for the vindication of those rights in the civil courts. *Erdman v. Mitchell*, 207 Pa. 79, 56 A. 327 (1903).

be resolved in favor of overruling the demurrer." 469 Pa. at 5–6, 364 A.2d at 693. *See also Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443 (1969); *King v. United Steel Corp.*, 432 Pa. 140, 247 A.2d 563 (1968).

In sustaining the Port Authority's demurrer, the lower court violated these established principles in two respects. First, the court misread the complaint when it stated: "Failure to disclose a material fact, such as the one in issue, is an element which may be considered, along with others, if any, factors in determining whether to enter into an employment contract." The complaint did *not* allege that appellant failed to disclose his prior conviction to the Port Authority; the complaint specifically alleged that he *did* inform the Port Authority of the conviction. The gravamen of the complaint is that the Port Authority refused to hire appellant because of this information. Second, the lower court erred by considering factual matters not averred in the complaint. *See Muia v. Fazzini*, 416 Pa. 377, 378, 205 A.2d 856, 857 (1965) (per curiam) (in ruling on a demurrer to a complaint, a court may not "consider factual matters neither averred in the complaint nor disclosed in any other part of the record"). The lower court stated: "A refusal to hire because of a conviction for aggravated assault and battery is reasonable, given the fact that a bus driver is constantly dealing with the public, often under stressful and anger-provoking situations." The reasonableness of a refusal to employ appellant as a bus driver because of a single conviction that occurred thirteen years before and arose out of a domestic dispute, and for which he was subsequently pardoned by the Governor, cannot be subject to judicial notice. As an initial matter, the lower court did not know (because the complaint did not disclose) the reasons that prompted the Governor to grant the pardon. It might have been granted because appellant was innocent but erroneously convicted, or because mitigating circumstances existed at the time of the offense, or because appellant's rehabilitation subsequent to the offense warranted a pardon. Beyond the

circumstances surrounding the Governor's pardon, the lower court could not assess, on the basis of the averments in the complaint, the relationship, if any, between the assault thirteen years prior to appellant's employment application and appellant's present ability to perform the duties of a bus driver. Even if the lower court could have taken notice that a bus driver is "often under stressful and anger–provoking situations," the court could not have determined that the Port Authority had reason to believe that appellant would be unable to respond to stressful situations appropriately. In addition, the lower court could not have known whether other governmental objectives–such as administrative efficiency and economy–were present and sufficiently compelling to justify an absolute exclusion by the Port Authority of all applicants for bus driving positions who had ever been convicted of aggravated assault and battery.

The Port Authority argues that appellant's complaint is deficient because it does not allege that its hiring standards are arbitrary or unreasonable, or that the Port Authority has a general policy excluding the hiring of persons with convictions. While appellant's pleading would have been better had he alleged that the Port Authority's refusal to employ him as a bus driver was without reasonable relation to any legitimate governmental objective, his failure to plead this does not amount to a fatal defect in the complaint. Appellant averred that he was denied employment as a bus driver by the Port Authority because of a thirteen year old assault conviction, that he had been pardoned for the offense, that he was in all respects suitable and qualified for employment as a bus driver, and that the Port Authority's refusal violated his rights under article I, section 1. These averments sufficiently pleaded a cause of action.

We also reject the Port Authority's argument that appellant's rights under article I, section 1, turn upon whether the Port Authority has a general policy excluding the hiring of persons with assault convictions. Appellant has the right

under article I, section 1, to be free of arbitrary governmental action. The government may be arbitrary with or without a general policy.

■■■ In finding that appellant has stated a cause of action under article I, section 1, we wish to stress again what is repeated throughout this opinion. Public employers are not always precluded from considering a job applicant's prior convictions in making hiring decisions. In some instances, the fact of a prior conviction, even though pardoned, will be extremely relevant, perhaps conclusive, on an individual's fitness for a particular job. For example, an absolute bar against the employ of convicted arsonists as firemen would probably present no constitutional problems. *See Carlyle v. Sitterson*, 438 F.Supp. 956 (D.N.C.1975). Similarly, a bar against the employment of convicted felons as police officers would probably be reasonable since "a person who has committed a felony may be thought to lack the qualities of self-control or honesty that this sensitive job requires." *See Upshaw v. McNamara*, 435 F.2d 1188, 1190 (1st Cir. 1970); *see also DeVeau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (disqualification of ex-felon from waterfront union offices unless he is subsequently pardoned or received certificate of good conduct from parole board does not violate federal constitution). We hold, however, that when a public employer denies employment to an individual because of his criminal record, the employer's denial of employment must be reasonably related to the furtherance of a legitimate public objective. Here, the reasonableness of the Port Authority's refusal to hire appellant is not apparent on the face of the complaint. The Port Authority's demurrer should therefore not have been sustained.

Reversed.

VAN der VOORT, J., concurs in the result.